## Christopher & Simpson Architectural Iron & Foundry Co. v. M. Yeager and Phil. Yeager, Partners, Doing Business as M. Yeager & Son.

1. CONTRACTS—*Defaulting Party Liable for Increased Cost of Obtaining the Material Elsewhere.*—Where a company contracts to furnish iron by a certain time, and defaults. it is liable to the other contracting party for any increased cost of obtaining material elsewhere on short notice to take the place of that ordered from the defaulting company.

Assumpsit.—Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 24, 1902.

JAMES W. & EDWARD C. CRAIG, attorneys for appellant; H. M. STEELY, of counsel.

E. R. E. KIMBROUGH and J. H. LEWMAN, attorneys for appellees.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of assumpsit brought in the Circuit Court of Vermilion County on July 30, 1901, by the appellees, M. Yeager and Phil. Yeager, partners, doing business under the firm name of M. Yeager & Son, at Danville, Illinois, against the appellant, Christopher & Simpson Architectural Iron and Foundry Company, a corporation having its office and shop at St. Louis, Missouri, to recover for the amount which the steel material mentioned in a certain contract between the appellees and the appellant cost the appellees over and above the price at which the appellant had agreed in said contract to furnish the same but neglected to do so, as provided therein.

The contract sued upon is as follows:

" This agreement, made the 30th day of October, 1901, between M. Yeager and Phil. Yeager, doing business under the firm name of M. Yeager & Son, of Danville, Illinois, party of the first part, hereinafter designated the con·tractors, and Christopher & Simpson, of St. Louis, Missouri, hereinafter designated the subcontractors.

Article 1.   The subcontractor, under the direction of the contractors or their authorized foreman, and to the acceptance of the supervising architect of the United States Treasury Department at Washington, D. C., or his representatives, agrees to furnish the first floor beams, ceiling, roof beams, channel tees, columns and furrying around columns, trusses, channel frames for doors, beam girders over windows, tie rods, separators, and anchors for beams, all to be done in strict accordance with the plans and specifications as prepared by the supervising architect of the United States Treasury Department, Washington, D. C.

Art. 2.   Subcontractors shall begin their work at once, and shall complete and deliver the same in first-class condition, all marked ready to set F. O. B. cars at Elgin, Ill., not later than the 20th day of April, 1901.

Art. 3.   Should the subcontractors fail to provide the material mentioned therein on the date mentioned above, contractors may, after five days written notice sent to the subcontractors, provide such material and deduct the cost thereof from any moneys due or to become due the subcontractors under this agreement; or if in the contractors' judgment the failure of the subcontractors as above, is sufficient action, they may, at the expiration of the above notice, terminate the employment of the above subcontractors and relet the work on the best terms offered at the expense of the subcontractor, charging him with the amount of all expenses so incurred, crediting him with the amount herein agreed on final settlement of this agreement.

Art. 4.   For the materials herein mentioned the contractors are to pay to the subcontractors two thousand nine hundred dollars ($2,900), payments to be made every thirty days, based on the estimates made by the supervising architect or his authorized representative, less ten (10) per cent, which will be retained until the final acceptance of the material mentioned herein by the supervising architect or his authorized representative."

The appellant pleaded *non-assumpsit* and a set-off of $510 for shop drawings, which it claimed to have furnished to the appellees at their request. The appellees traversed the plea of set-off, and the case was tried by jury and resulted in a verdict and judgment in favor of the appellees for $1,480.62.

The appellant, having moved for a new trial and it being

denied, brings the case to this court by appeal, and to reverse the judgment its counsel argue for error that the court admitted improper evidence; refused to admit proper evidence; gave an improper instruction; refused proper instructions; improperly modified proper instructions and as modified, gave them; that the verdict and judgment are not supported by the evidence and the law applicable thereto, and that the damages assessed are excessive.

It appears that the contract sued on was reduced to writing and signed by the parties on January 9, 1901, but that it was entered into on October 30, 1900.

The specifications referred to in the contract provide: (1) That shop drawings in triplicate of the steel material for the building and conforming to the office drawings and specifications, must be submitted and approved before any work referred to by such drawings should be done; (2) that all steel material must be made of "Open Hearth Steel;" and (3) that the steel material must be submitted to the United States inspectors for inspection and approval both at the mill and at the shop.

Shortly after the contract was signed by the parties, the appellant, without any opportunity for inspection and before shop drawings were submitted and approved, had sent from the mill to its shop in St. Louis, "Bessemer Steel" material instead of "Open Hearth Steel," from which to make the steel work which it had agreed to furnish for the post-office building, and it did not submit the shop drawings mentioned in the contract until after repeated requests therefor by the appellees, and not until the time limit in the contract for the material to be delivered, had nearly been reached.

The correspondence through the mail between the officers of the appellant and the appellees after the contract was signed, clearly shows that the parties themselves fully understood that the shop drawings were to be furnished by the appellant and not by the appellees, and when they were finally so furnished, the United States inspectors mentioned in the contract, at once inspected the material at appellant's

shop, and ascertaining that it was "Bessemer Steel" instead of "Open Hearth Steel," declined to approve it for the Elgin post-office, and so informed the officers of the appellant and the appellees. The appellant then requested the appellees to extend the time in which the appellant should furnish the steel material mentioned in the contract, · but the appellees declined, for the reason that to do so would render them unable to complete the building within the time limited for them to finish it, default of which would cause them to incur a heavy penalty for each day after such limit had been reached and the building remained unfinished.

Failing to get the time limit in which to deliver the steel material extended, appellant declined to do anything further toward furnishing same, and the appellees, on May 24, 1901, notified the appellant in writing, that unless it furnished said material on or before June 1, 1901, they would obtain same and charge the additional expense therefor, to it. The appellant failing to furnish the material mentioned in the notice, the appellees bought it at an additional cost above the contract price of $1,480.62, some of which additional cost was occasioned on account of appellees requiring it to be furnished on short notice.

To procure the material in question quickly, the appellees obtained some of it of a slightly different size and weight than that specified in the plans and specifications in question, but such difference did not add anything additional to the cost thereof.

By the rulings on the evidence and instructions, the trial court, in effect, refused to allowed the appellant anything for the shop drawings, and allowed the appellees for the additional cost of the material, and the principal contention of counsel for the appellant is that their client should have been allowed for the shop drawings and should not have been charged with so much of the increased cost of the material as was occasioned by causing it to be delivered in such a short time after it was ordered.

But in that view we can not concur, for the reason that

by the correspondence of the parties, it appeared that they both construed the contract as meaning that the appellant should furnish such shop drawings, and the court therefore properly refused to allow the appellant to charge the appellees therefor; and it was also proper to allow the appellees to recover the additional cost of the material, occasioned by its being required to be speedily furnished, for the reason that when the appellant agreed to furnish the material by April 20, 1901, its officers knew that the appellees would be subjected to extra costs by way of a penalty unless the appellant would furnish the material promptly at or before that time, to enable the appellees to finish the building within the time they agreed to, under a penalty, and the appellant having defaulted in so furnishing the material, without fault on the part of appellees, it, and not they, must bear the reasonable consequence thereof.

The other minor contentions of counsel for the appellant will not be referred to for the reason that in our opinion the trial had and conclusion reached in the Circuit Court in this case, are shown by the record to have been fair to both parties, and therefore the judgment should and will be affirmed.